WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

PENNY DENTON,                          )
                                       )
        Plaintiff,                     )
                                       )    No. CIV 05-1036 PHX RCB
            vs.                        )
                                       )         O R D E R
TOWN OF WICKENBURG,                    )
                                       )
        Defendant.                     )
_____)

       In this employment discrimination action, Plaintiff alleges
violations of the Arizona Civil Rights Act ("ACRA") and the
Americans with Disabilities Act ("ADA"), and asserts claims for
wrongful discharge in violation of public policy, and intentional
infliction of emotional distress.  Third Am. Compl. (doc. # 36)
¶¶ 21-29.  Currently pending before the Court are Defendant's
motion for summary judgment (doc. # 20) and motion to strike (doc.
# 27), both of which have been fully briefed.  Having carefully
considered the arguments raised, the Court now rules.
. . .

I.    **BACKGROUND**

   **A. Undisputed Facts**

   The Town of Wickenberg ("Defendant") has only one animal control officer ("ACO") position, which requires the individual to be out in the field essentially full-time in a forty-hour week. Def.'s Statement of Facts (doc. # 21) ("DSOF") ¶¶ 3-4.   The written job description indicates that the "essential duties and responsibilities" include "[p]atrol[ing] streets to locate stray animals and promptly capture animals and transport them to an animal shelter."[1]  Pl.'s Statement of Facts (doc. # 25) ("PSOF"), Ex. 3 at 1.  When there is no ACO available to secure animals, that duty is performed by the town's police officers.[2]  DSOF ¶ 16.

   On March 6, 1992, Defendant hired Plaintiff Penny Denton as a part-time ACO.  DSOF ¶ 1; PSOF ¶ 1.  Plaintiff's status was changed to full-time ACO on July 1, 1999.  DSOF ¶ 2; PSOF ¶ 1.

   On May 30, 2001, while pursuing stray dogs, Plaintiff got caught on a fence, and sprained her left ankle.  DSOF ¶ 7. Plaintiff underwent four separate surgeries for her ankle, and commenced industrial leave on July 10, 2001.  Id. ¶¶ 8, 10. Although she was scheduled to return on July 23, 2001, Plaintiff's treating physician, Gustavo J. Armendariz, M.D., did not release her to light duty status until September 4, 2001.  Id. ¶¶ 10-11. Thereafter, in May of 2002, Plaintiff came under the care of

---

   [1]  The words "police aid" have recently been added to the title of the position, reflecting the addition of clerical functions to the ACO's essential duties.  PSOF ¶¶ 7-8.

   [2]  According to Plaintiff, the ACO would regularly use a police radio to call for assistance with large animals such as deer, which would require more than one individual to move.  See PSOF, Ex. 1 ¶ 7.

Stanley C. Graves, M.D., who performed the second of Plaintiff's four ankle surgeries on June 11, 2002.  Id. ¶¶ 12-13.  Dr. Graves released Plaintiff to work in October of 2002, subject to the following work restrictions: (1) no lifting or carrying of more than twenty-five pounds and (2) no walking on uneven ground.  Id. ¶ 14.  Plaintiff was subsequently placed on light-duty status.  Id. ¶ 15; PSOF ¶ 34.

In his treatment notes of January 2, 2003, Dr. Graves indicated that Plaintiff continued to struggle on light-duty status, and that she "will always have an abnormal ankle.  She will always have an impairment and . . . it is unlikely that she will ever return to significant walking and standing."  DSOF ¶ 17.  Dr. Graves also reported the following restrictions:

> [Plaintiff] will always have permanent restrictions even with a solid fusion or ankle replacement.  These will not change even after surgery.  These would require approximately 3 hours standing in an entire shift at most.  She would not be able to lift more than 20 lbs. She could not squat, stoop or climb ladders. She would have to remain on even surfaces.

Id.  Plaintiff then underwent additional surgeries on April 23, 2003 and November 5, 2003.  Id. ¶ 19.  On May 11, 2004, an independent medical examination ("IME") was performed by Dr. William Leonetti, M.D., who advised as follows:

> I believe that based on her motion limitations, [Plaintiff] should avoid standing any time longer than four hours per 8-hour shift.  She should avoid working on any unlevel ground surfaces.  She should avoid any climbing, excessive use of stairs or ladder use.  Her lifting should be limited to 45 pounds.  She should avoid pushing and pulling over 50 pounds.  She should avoid any impaction type activities.  These work restrictions will be permanent.

1  Id. ¶¶ 26-27.

2      On June 25, 2004, Plaintiff received notice that her

3  employment would be terminated effective July 1, 2004, citing her

4  inability to perform the duties of ACO on account of her permanent

5  work restrictions.  DSOF, Ex. O.

6      In a handwritten note dated July 9, 2004, Dr. Graves released

7  Plaintiff to full-duty for the ACO position.  DSOF ¶¶ 30-31.

8  However, in his March 3, 2005 testimony before the Industrial

9  Commission of Arizona, Dr. Graves stated that no one with an ankle

10  fusion would be able to stand for 90% of an eight-hour shift, run

11  occasionally, or traverse uneven ground while restraining or

12  retaining animals.  Id. ¶¶ 32-33.  Dr. Leonetti similarly testified

13  that Plaintiff could not perform those duties, noting that the

14  "difficulty will be running and/or walking or moving on uneven

15  surfaces," and explaining that a person with a fused ankle joint

16  would have a "considerable loss of balance."  Id. ¶¶ 34-35.

17  However, Dr. Leonetti also testified that it would be an "excellent

18  idea" for Plaintiff to receive a supportive care award for an ankle

19  brace, "especially if she is going to try and be physically

20  active."  PSOF, Ex. 11 at 10-11.

21      **B. Disputed Facts**

22      Based on Plaintiff's testimony before the Industrial

23  Commission of Arizona, Defendant contends that the ACO spends over

24  ninety percent of the workday on her feet, and is required to walk

25  on uneven surfaces and run occasionally.  Id. ¶¶ 5-6.  In an effort

26  to clarify that testimony, Plaintiff has submitted an affidavit

27  explaining that she understood the phrase, "up on your feet," as

28  distinguishing between the time spent at her desk and the time

spent on patrol outside the office.  PSOF ¶ 28.  Plaintiff states
that the majority of her patrols as the ACO were conducted from a
patrol vehicle, not on foot, and that she rarely ran or jogged on
the job to pursue or capture animals.  Id. ¶¶ 31-32.

During her time on light-duty status, the chief of police
would regularly instruct Plaintiff to radio for assistance if she
could not lift an animal.  PSOF ¶ 34.  The parties disagree as to
whether, in light of this assistance, Plaintiff was performing all
of the ACO's essential duties.  See DSOF ¶ 15; PSOF ¶ 34.

## II.   STANDARD OF REVIEW

Summary judgment is appropriate "when there is no genuine
issue of material fact" such that "the moving party is entitled to
judgment as a matter of law."  Fed. R. Civ. P. 56.  In determining
whether to grant summary judgment, a district court must view the
underlying facts and the inferences to be drawn from those facts in
the light most favorable to the nonmoving party.  See Matsushita
Elec. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

If a party will bear the burden of proof at trial as to an
element essential to its claim, and fails to adduce evidence
establishing a genuine issue of material fact with respect to the
existence of that element, then summary judgment is appropriate.
See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  Not
every factual dispute is capable of defeating a properly supported
motion for summary judgment.  Rather, the party opposing the motion
must show that there is a genuine issue of material fact.  See
Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  A
factual dispute is genuine if the evidence is such that a rational
trier of fact could resolve the dispute in favor of the nonmoving

1  party.  Id. at 248.  A fact is material if determination of the

2  issue might affect the outcome of the case under the governing

3  substantive law.  Id.  Thus, a party opposing a motion for summary

4  judgment cannot rest upon bare allegations or denials in the

5  pleadings, but must set forth specific facts demonstrating a

6  genuine issue for trial.  See id. at 250.  If the nonmoving party's

7  evidence is merely colorable or not significantly probative, a

8  court may grant summary judgment.  See id. at 249; see also Cal.

9  Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, 818 F.2d

10  1466, 1468 (9th Cir. 1987).

11  **III. DISCUSSION**

12       Plaintiff's Third Amended Complaint alleges violation of the

13  ACRA (Count 1), wrongful discharge in violation of public policy

14  (Count 2), intentional infliction of emotional distress (Count 3),

15  and violation of the ADA (Count 4).  Third Am. Compl. (doc. # 36)

16  ¶¶ 21-29.  In her response to Defendant's motion for summary

17  judgment, Plaintiff states that she does not oppose dismissal of

18  her state law claims for wrongful discharge and intentional

19  infliction of emotional distress (Counts 2 and 3).  Accordingly,

20  the Court will grant Defendant's motion with respect to Counts 2

21  and 3, and resolve the motion with respect to the remaining ADA and

22  ACRA claims (Counts 1 and 4) below.  See Resp. (doc. # 24) at 15.

23       **A. Motion to Strike Plaintiff's Affidavit**

24       Before addressing Defendant's motion for summary judgment, the

25  Court turns to Defendant's motion to strike Plaintiff's affidavit.

26  Defendant alleges that Plaintiff's affidavit is a self-serving

27  "sham" that is contradictory to Plaintiff's prior sworn statements.

28  Mot. (doc. # 27) at 4-5.  Rule 12(f) permits the court to strike

1  "from any <u>pleading</u> any insufficient defense or any redundant,

2  immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P.

3  12(f) (emphasis added).  By its terms, Rule 12(f) applies to

4  pleadings and not affidavits.  <u>See</u> <u>id.</u>; <u>Sidney-Vinstein v. A.H.</u>

5  <u>Robins Co.</u>, 697 F.2d 880, 885 (9th Cir. 1983); Charles Alan Wright

6  & Arthur R. Miller, 5C <u>Federal Practice & Procedure</u> § 1380 (3d ed.

7  2005) (Rule 12(f) is "neither an authorized nor a proper way . . .

8  to strike an opponent's affidavits.").

9       Defendant does not argue in terms of Rule 12(f), which is the

10  proper basis for striking matters from pleadings, but, instead,

11  reminds the Court "that a party cannot 'create' an issue of fact by

12  an affidavit contradicting her prior testimony" in order to survive

13  summary judgment.  Mot. (doc. # 27) at 4 (citing <u>Kennedy v. Allied</u>

14  <u>Mut. Ins. Co.</u>, 952 F.2d 262, 266 (9th Cir. 1991)).  The Ninth

15  Circuit's rule in <u>Kennedy</u> establishes the weight to be accorded

16  evidence by a court in considering a motion for summary judgment,

17  and does not require the court to actually strike the alleged

18  "sham" affidavit proffered by the non-moving party.  <u>See</u> <u>Kennedy</u>,

19  952 F.2d at 266-67.  Therefore, the Court will deny Defendant's

20  motion to strike (doc. # 27).[3]

21       **B. Motion for Summary Judgment**

22       Defendant argues that summary judgment is appropriate with

23

24       [3]   The motion is denied only on the technical basis that
25  Defendant has requested an unnecessary form of relief, when the
   matter could have been adequately briefed in Defendant's reply in
26  support of the underlying motion for summary judgment (doc. # 20) and
   a sur-reply by Plaintiff, if requested.  As such, in resolving the
27  motion for summary judgment (doc. # 20), the Court will still
   consider the substance of Defendant's arguments, and Plaintiff's
28  response, regarding whether Plaintiff's affidavit is truly a "sham"
   that fails to create a genuine issue of material fact.

respect to Plaintiff's ACRA and ADA claims (Counts 1 and 4),
because (1) Plaintiff cannot show that she was a "qualified
individual with a disability," 42 U.S.C. § 1211(8), Ariz. Rev.
Stat. § 41-1461(8) (West 2004), at the time of the adverse
employment action, and (2) Plaintiff cannot show any evidence of
pretext to overcome Defendant's legitimate, non-discriminatory
reason for terminating her employment.  Mot. (doc. # 20) at 4-8.

### 1. Qualified Individual with a Disability

Both the ADA and ACRA prohibit an employer from discriminating
against an individual with a disability by terminating the person's
employment because of that disability.  42 U.S.C. § 12112(a); Ariz.
Rev. Stat. § 41-1463(B)(1) (West 2004).  In addition, both acts
make it unlawful for an employer to fail to make reasonable
accommodations to the known physical limitations of an otherwise
qualified individual, unless the employer can demonstrate that the
accommodation would impose an undue hardship.  42 U.S.C. §
12112(b)(5)(A); Ariz. Rev. Stat. § 41-1463(F)(4) (West 2004).  To
prevail on her ADA and ACRA claims, Plaintiff must first prove that
she is a "qualified individual with a disability," _i.e._, that she
was "an individual with a disability who, with or without
reasonable accommodation," could perform all of the essential
functions of the job of ACO.  See 42 U.S.C. § 1211(8); 29 C.F.R. §
1630.2(m); Johnson v. Paradise Valley Unified Sch. Dist., 251 F.3d
1222, 1225 (9th Cir. 2001); accord Ariz. Rev. Stat. § 41-1461(8)
(West 2004).

In its motion for summary judgment, Defendant argues that
Plaintiff's ADA and ACRA claims fail as a matter of law, because
she could not perform the essential functions of the job of ACO,

1    and, therefore, was not a "qualified individual with a disability."

2    Mot. (doc. 20) at 4-6.  In particular, Defendant asserts that the

3    position's essential functions of patrolling the town and

4    responding to calls of animals at large require the ability to run

5    and walk on uneven surfaces-- activities which Plaintiff, with or

6    without reasonable accommodation, could not perform due to the

7    condition of her ankle.  See id.  Plaintiff contends that summary

8    judgment is inappropriate, because there are genuine issues of

9    material fact as to (1) whether running and traversing uneven

10   terrain are essential functions of the job of ACO and (2), even if

11   they were, whether she could perform those essential functions with

12   or without reasonable accommodations.  Resp. (doc. # 24) at 7-14.

13       **a. Essential Functions**

14       "The term essential functions means the fundamental job duties

15   of the employment position the individual with a disability holds

16   or desires."  29 C.F.R. § 1630.2(n)(1).  The essential functions of

17   a given position are determined on a case by case basis, taking

18   into consideration such factors as written job descriptions, the

19   work experience of past incumbents in the job, the number of

20   employees available to perform the function, and the employer's

21   judgment as to which functions are essential.[4]  29 C.F.R.

22   § 1630.2(n); see also Rent A Ctr. v. Indus. Comm'n, 191 Ariz. 406,

23   956 P.2d 533, 536 (Ct. App. 1998).  In the instant case, the

24   relevant factors demonstrate that the activities of running and

25   traversing uneven terrain are part and parcel of the ACO's

---

27       [4]   Because the ACRA was modeled after the federal employment
     discrimination laws of Title VII, Arizona courts apply federal case
28   law in applying the ACRA.  See Francini v. Phoenix Newspapers, Inc.,
     188 Ariz. 576, 937 P.2d 1382, 1388 (Ct. App. 1996).

1  essential functions, and there is no evidence from which a rational

2  trier of fact could conclude otherwise.

3  **(i). Written Job Description**

4  The written job description indicates that the ACO's

5  "essential duties and responsibilities" include "[p]atrol[ing]

6  streets to locate stray animals and promptly capture animals and

7  transport them to an animal shelter."  PSOF, Ex. 3 at 1.

8  Plaintiff claims that the position has "morphed" into a

9  clerical job, because the words "police aid" have been added to, or

10  substituted for, the title of "animal control officer."  Resp.

11  (doc. # 24) at 11.  Plaintiff's primary basis for this claim arises

12  from Police Chief Anthony Melendez's deposition testimony and a

13  letter from Police Commander Gary Newton.  See PSOF ¶¶ 7-8.

14  However, this evidence is hardly colorable, and not significantly

15  probative on the point Plaintiff seeks to establish.  Chief

16  Melendez's testimony merely indicates that the change in title

17  reflected the addition of clerical duties to the job

18  responsibilities.  PSOF, Ex. 4 at 6-7.  In other words, the police

19  aid/ACO is still expected to control animals, which as before,

20  entails patrolling the streets to capture and transport the

21  animals.  Even if the majority of time on the job is spent

22  performing desk duties, that does not demonstrate, as Plaintiff now

23  suggests, that the pursuit and capture of animals are no longer

24  essential functions of the position.  Indeed, the position seems to

25  exist for the performance of those very functions.[5]  Moreover,

26

27      [5]  Plaintiff's arguments suggest that if the balance of time
28  spent pursuing and capturing animals is outweighed by time spent
performing desk duties or patrolling the streets in her vehicle, then
the capture of animals is no longer an essential function.  This

1  Commander Newton's letter, although referring to the position as
2  "police aid" rather than "police aid/animal control officer," says
3  nothing about job duties to substantiate Plaintiff's apparent
4  belief that the animal control duties have suddenly become
5  incidental or optional.  PSOF, Ex. 12.  As such, the Court finds
6  that this evidence does not establish a genuine issue of material
7  fact as to the ACO's essential functions.  See Cal. Architectural
8  Bldg. Prods., Inc., 818 F.2d at 1468.  On balance, the written job
9  description for the position shows that the ACO's primary duties
10 include patrolling the streets to locate, capture, and transport
11 animals.

12         **(ii). Experience of Past Incumbent in the Job**

13         In discussing her work experience as a past incumbent in the
14 job, Plaintiff testified before the Industrial Commission of
15 Arizona that the ACO position required her to be in the field
16 essentially full-time, spending over ninety percent of that time on
17 her feet, and that the job required her to walk on uneven surfaces
18 and occasionally run.  DSOF, Ex. D at 18-19.

19         Plaintiff now argues that her prior testimony before the
20 Industrial Commission of Arizona should not be construed as
21 implying that she was literally "out in the field" or "up on [her]
22 feet" running for ninety percent of the day.  See Resp. (doc.
23 # 24)at 10-11.  Rather, Plaintiff maintains that she intended to

24

25 ─────────────────
   reasoning is flawed, because it places inordinate value on how time
26 is spent without considering the relative significance of the duties
   performed in that time.  Under this logic, a town would have to be
27 significantly overpopulated with animals before the ACO would be
   expected to control animals.  Until then, capturing animals would
28 only be an incidental duty as compared to the seemingly more
   essential functions of doing desk work and cruising the streets.

1  convey that she spent most of her day away from her desk,

2  patrolling the streets in the patrol vehicle.[6]  See PSOF, Ex. 1

3  ¶¶ 13-17.  However, Plaintiff does not contend that she never ran

4  or traversed uneven surfaces to capture an animal.  See id. ¶¶ 18-

5  20.  Even if Plaintiff spent most of her time in her patrol

6  vehicle, or was able to capture most animals without a significant

7  chase, the brevity of time spent on foot-- possibly running,

8  possibly crossing uneven terrain-- does not rule out those

9  activities from the ACO's essential function of capturing animals.

10  Plaintiff's belief that running would tend to "spook" the animals,

11  making their capture more difficult, may be well supported in her

12  experience, yet even Plaintiff seems to accept that it is sometimes

13  necessary to run in order to capture an animal.  See id. ¶ 18.

14  Therefore, Plaintiff's testimony about her experience as an

15  incumbent in the job, even as clarified in her recent affidavit,

16  tends to show that running and traversing uneven terrain are

17  essential functions of the job.

18

19         [6]  In its motion to strike, Defendant hastens to characterize

20  Plaintiff's attempt to clarify her prior testimony as a "sham"
   affidavit that should be disregarded.  See Mot. (doc. # 27) at 4-5.

21  The Court disagrees.  Although self-serving affidavits rarely create
   genuine issues of material fact, the Ninth Circuit has expressly

22  cautioned that district courts are not to discount every seemingly
   "contradictory affidavit" that is introduced to explain earlier

23  testimony.  Kennedy, 952 F.2d at 266-67.  Rather, the district court
   must make a determination that the seemingly contradictory affidavit

24  actually is a "sham."  Id. at 267.

25         Having reviewed the hearing transcript, the Court finds that
   Plaintiff's clarification of potential ambiguities in her earlier

26  testimony is reasonable.  Indeed, her understanding of "out in the
   field" as meaning that she was simply away from her desk patrolling

27  the streets in a vehicle, as is customary in modern times, seems more
   plausible than Defendant's view that she was literally on her feet

28  for ninety percent of the day.  Therefore, the Court will not
   discredit Plaintiff's affidavit as a pure "sham."

1          **(iii). Number of Employees Available to Perform Function; and
2                  Employer's Judgment as to Which Functions are Essential**

3          The fact that there is only one ACO makes it imperative that
4   the person selected for the position be able to run and cross
5   uneven terrain in the pursuit of animals, and Defendant's judgment
6   as to the essential functions is evidently the same.  <u>See</u> DSOF ¶ 3;
7   DSOF, Ex. O.  Although the original job description does not
8   expressly state that running and traversing uneven terrain are
9   essential functions, it is apparent that these activities are the
10  natural concomitants of the position's essential function of
11  patrolling the streets to locate, capture, and transport animals.
12  <u>See</u> PSOF, Ex. 3 at 1, 3.

13         A party opposing a motion for summary judgment cannot rest
14  upon mere allegations or denials in the pleadings or papers, but
15  instead must set forth specific facts demonstrating a genuine issue
16  for trial.  <u>Anderson</u>, 477 U.S. at 250.  Here, the Court finds that
17  Plaintiff has failed to set forth specific facts demonstrating a
18  genuine issue for trial regarding the essential functions of the
19  position of ACO.  Summary judgment is appropriate "against a party
20  who fails to make a showing sufficient to establish the existence
21  of an element essential to that party's case, and on which that
22  party will bear the burden of proof at trial."  <u>Celotex Corp.</u>, 477
23  U.S. at 322.  Based on the undisputed facts, reasonable jurors
24  could not differ as to the conclusion that running and traversing
25  uneven terrain are essential functions of the position of ACO.
26  Therefore, summary judgment is appropriate on the issue of
27  essential functions.
28  . . .

**b. Reasonable Accommodations**

"[T]he employee bears the burden of proving the existence of specific reasonable accommodations that the employer failed to provide." Zivkovic v. S. Cal. Edison Co., 302 F.3d 1080, 1088 (9th Cir. 2002).  The term "reasonable accommodation" means "[m]odifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable a qualified individual with a disability to perform the essential functions of that position." 29 C.F.R. § 1630.2(o)(1)(ii).  Reasonable accommodations under the ACRA and ADA may include the "acquisition or modifications of equipment or devices."  Ariz. Rev. Stat. § 41-1461(9)(b) (West 2004); accord 29 C.F.R. § 1630.2(o)(2)(ii).  However, an employer is generally not expected, in making a reasonable accommodation, to assign the essential functions of one position to employees in other positions.  See, e.g., Rent A Ctr., 956 P.2d at 536 (citing Reigel v. Kaiser Found. Health Plan of N.C., 859 F. Supp. 963 (E.D.N.C. 1994)).

Defendant argues that Plaintiff could not, with or without reasonable accommodations, perform the essential functions of running and traversing uneven terrain, and, therefore, was not a "qualified individual with a disability" under either the ADA or ACRA.  Mot. (doc. 20) at 4-6.  Plaintiff responds that, whatever the essential functions of the job are determined to be, there were reasonable accommodations that would have permitted her to perform those functions.  Resp. (doc. # 24) at 12.  Specifically, Plaintiff contends that (1) a vehicle to patrol the streets, (2) a radio to call police officers for assistance with animals she could not lift

alone due to her physical limitations, and (3) an ankle brace to assist her in being physically active would constitute reasonable accommodations enabling her to perform the essential functions of the job. Id. at 12-13.

### (i) Patrol Vehicle

Plaintiff claims that the ACO's patrol vehicle is a reasonable accommodation that would allow her to perform the essential functions of the job. See Resp. (doc. # 24) at 12. It is hard to imagine the patrol vehicle as a reasonable accommodation when it is listed in the job description among the equipment that the ACO is expected to use. See PSOF, Ex. 3 at 3. More importantly, although the vehicle may assist the ACO in patrolling the town's streets, there is no indication of how it would eliminate the need for Plaintiff to run or cross uneven terrain when pursuing animals. See PSOF, Ex. 1 ¶ 18. Absent some special accoutrements that have not been brought to the Court's attention, it is unfathomable that the patrol vehicle would assist Plaintiff in such a way that she would never have to disembark her vehicle to capture an animal. Accordingly, the Court finds no triable issue as to whether the patrol vehicle is a reasonable accommodation in this case.

### (ii) Police Radio

As another reasonable accommodation, Plaintiff suggests that she would be "free to radio for assistance in the event she encountered an animal that any physical limitations prevented her from capturing or picking up." See Resp. (doc. # 24) at 12 (emphasis added). In support, Plaintiff states (1) that she "was never disciplined for radioing for assistance and frequently was reminded to radio for assistance," and (2) that "[a]fter [her]

1   injury, when [she] was placed on light duty status, the Chief of

2   Police would regularly instruct [her] to radio for assistance if

3   [she] could not lift an animal."  PSOF, Ex. 1 ¶ 8.

4        Plaintiff's argument obfuscates the distinction between

5   reasonable accommodations and the essential functions of the ACO

6   position.  For instance, her assertion that "[t]he Town's police

7   officers often perform the duties of the Animal Control Officer and

8   assist the Animal Control Officer when she is on duty," Resp. (doc.

9   # 24) at 12, purports to acknowledge that there are duties

10  belonging to the ACO, while simultaneously sloughing off those

11  responsibilities to the town's police officers.  If the police

12  officers were always required to provide the same level of

13  assistance provided during the ACO's light-duty[7] status, the

14  essential functions of the ACO would have to be reassigned to the

15  police officers.  This is not a reasonable accommodation.  See Rent

16  A Ctr., 956 P.2d at 536.

17      **(iii) Ankle Brace**

18       Finally, Plaintiff claims that an ankle brace might constitute

19  a reasonable accommodation, because Dr. Leonetti believed that she

20  was entitled to a supportive care award for an ankle brace.  Resp.

21  (doc. # 24) at 12-13.  In his testimony before the Industrial

22  Commission of Arizona, Dr. Leonetti indicated that it would be an

23  "excellent idea" for Plaintiff to receive a supportive care award

24  for an ankle brace, "especially if she is going to try and be

25  physically active."  PSOF, Ex. 11 at 10-11.  It will take far more

26  than a reasonable inference to divine what Dr. Leonetti had in mind

27  _____

28       [7]  In light-duty status, Plaintiff was allowed "to call an
    officer for assistance when loading large dogs or when a 'chase'
    situation ar[ose]."  DSOF, Ex. J.

- 16 -

in terms of being "physically active."  Evidence that is merely
colorable or not significantly probative does not create a genuine
issue of material fact.  <u>See</u> <u>Anderson</u>, 477 U.S. at 248; <u>Cal.</u>
<u>Architectural Bldg. Prods., Inc.</u>, 818 F.2d at 1468.  Because no
reasonable juror could find that Plaintiff could actually run or
traverse uneven terrain using an ankle brace, based on Dr.
Leonetti's ambiguous reference to being "physically active,"
Plaintiff has failed to raise a triable issue of fact as to whether
an ankle brace would constitute a reasonable accommodation.  <u>See</u>
<u>Anderson</u>, 477 U.S. at 248.

    The Court finds that Plaintiff has failed to set forth
specific facts demonstrating a genuine issue for trial regarding
whether she could, with or without reasonable accommodation,
perform the essential functions of the position of ACO.  Summary
judgment is appropriate "against a party who fails to make a
showing sufficient to establish the existence of an element
essential to that party's case, and on which that party will bear
the burden of proof at trial."  <u>Celotex Corp.</u>, 477 U.S. at 322.
Based on the undisputed facts, reasonable jurors could not differ
as to the conclusion that Plaintiff was not a "qualified individual
with a disability."  <u>See</u> 42 U.S.C. § 1211(8); 29 C.F.R.
§ 1630.2(m); <u>Johnson</u>, 251 F.3d at 1225; <u>accord</u> Ariz. Rev. Stat.
§ 41-1461(8) (West 2004).  Therefore, summary judgment is
appropriate on Plaintiff's ACRA and ADA claims.

    **2. Non-Discriminatory Reason for Adverse Employment Action**
    Defendant contends that summary judgment is also appropriate
with respect to Plaintiff's ACRA and ADA claims, because Plaintiff
cannot produce any evidence of pretext to discredit Defendant's

legitimate, non-discriminatory reason for terminating her employment. Mot. (doc. # 20) at 6-8. Because summary judgment is appropriate on the basis that Plaintiff was not a "qualified individual with a disability," the Court need not address this argument.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Strike Plaintiff's Affidavit (doc. # 27) is DENIED.

IT IS FURTHER ORDERED that Defendant's Motion for Summary Judgment (doc. # 20) is GRANTED.

IT IS FURTHER ORDERED directing the Clerk of Court to enter judgment in favor of Defendant and terminate this case.

DATED this 13th day of September, 2006.

_____
Robert C. Broomfield
Senior United States District Judge

Copies to counsel of record